***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence and having reviewed the competent evidence of record; the Full Commission reverses the Opinion and Award of Deputy Commissioner Ledford and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
2. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
3 This case is subject to the North Carolina Workers' Compensation Act, and the parties are bound by and subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between the Plaintiff-employee and the employer Wal-Mart Stores, Inc. at the time of the alleged injury on December 4, 2005.
5. At the time of the alleged injury, the insurance carrier on the risk was American Home Assurance.
6. Plaintiff alleges she sustained an injury by accident arising out of and in the course of her employment with Wal-Mart Stores, Inc. on December 4, 2005
 ***********
As set forth in the Pre-Trial Agreement and in this Opinion and Award, the Commission addresses the following:
 ISSUES
1. Whether Plaintiff sustained an injury by accident to her back arising out of and in the course of her employment with Defendant-employer on December 4, 2005?
2. If so, whether Plaintiff's current back condition is causally related to the December 4, 2005 work injury??
3. What medical compensation, if any, is Plaintiff entitled to receive due to her alleged injury to her back? *Page 3 
4. What amount of temporary total disability benefits or other compensation, if any, is Plaintiff entitled to receive as a result of the alleged December 4, 2005 injury?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years old, having been born on January 28, 1958. She began working for defendant-employer on September 26, 1994. During her approximately twelve years of employment with defendant-employer she worked in several different positions including people greeter, department manager, third shift stocker, customer service manager, and assisted with the support team.
2. Prior to December 4, 2005, plaintiff had experienced low back and bilateral leg pain for which she sought and received medical treatment. The low back and bilateral leg pain began in February 2005. Plaintiff presented to Dr. Jeffrey Baker of Carolina Hand Spine Center, P.A. on April 25, 2005 regarding her low back and bilateral leg pain. At that time, conservative treatment was recommended. When the conservative treatment methods failed, Dr. Baker recommended surgery. Subsequently, plaintiff underwent L4-5 and L5-S1 open decompression on July 12, 2005.
3. Plaintiff's initial follow-up after the surgery was on July 27, 2007. At that time, plaintiff reported a forty percent improvement in her symptoms. On August 31, 2008, plaintiff reported that she was fifty-five to sixty percent better. Dr. Baker released plaintiff to return to work on October 4, 2004. *Page 4 
4. After the July 12, 2005 decompression surgery, plaintiff's leg symptoms had almost totally resolved.
5. Plaintiff returned to work for defendant-employer in October 2005 as third shift stocker. Her shift began at 10:00 p.m. and ended at 7:00 a.m. The majority of the time, she was assigned to work in the health and beauty aids department. The typical items that plaintiff would stock in the health and beauty aids department were bars of soap, liquid soap, shampoo, deodorant, hair coloring and razors. The products come packaged in cases of six, eight, or twelve items per case. A case of soaps weighed between fifteen and twenty pounds. A case of shampoo weighed between ten pounds. A case of razors was much lighter in weight.
6. There was a separate crew that would unload merchandise from the trucks. They would place the merchandise onto pallets and another set of employees would pull the pallets into the store. A pallet jack was utilized to pull the pallets into the store. If the employees responsible for pulling the pallets into the store were not present, then the third shift stocker would have to pull the pallet into the store. Once the pallet was in the store, the third shift stocker would place the merchandise into a shopping cart and push the cart to the area that she was assigned to stock.
7. On December 4, 2005, plaintiff was assigned to stock in the health and beauty aids department. There was no one working that could pull the pallets into the store; therefore, plaintiff pulled a pallet into the store using a pallet jack. She pulled the pallet into an aisle and began taking the merchandise off of the pallet and into shopping carts. At approximately 10:30 p.m., plaintiff bent over to pick up a box from a pallet to place into a shopping cart, and as she did, she experienced a real sharp pain in her back and sharp pains in her legs. As a result of the pain, plaintiff's knees buckled and she went down on one knee. *Page 5 
8. Plaintiff did not report this incident right away. She hoped it was just a muscle strain and that the symptoms would go away. She finished working her shift and went home. At home, the pain in her back and legs grew worse.
9. On the morning of December 5, 2005, plaintiff called defendant-employer's place of business and asked for her supervisor, Janna Watson, in order to report her injury. Ms. Watson was not at work when plaintiff called. Plaintiff was informed that she would need to report her injury to Ms. Watson when she reported to work. Plaintiff waited until Ms. Watson was at work and went to defendant-employer's place of business to report her injury.
10. Defendant-employer recorded that plaintiff reported her injury at 10:15 a.m. on December 5, 2005. After reporting her injury, plaintiff requested medical treatment. A "Workers' Compensation Request for Medical Care" form was completed. An "Associate Statement-Workers Compensation" form was also completed by plaintiff.
11. Hilda Sands, a personnel manager with defendant-employer, scheduled an appointment for plaintiff at Medical Associates of Davie. Plaintiff presented to Medical Associates of Davie on December 7, 2005 with a chief complaint of acute onset of low back pain. Plaintiff was written out of work from December 7, 2005 until December 12, 2005.
12. Also on December 7, 2005, based upon her familiarity and history with Dr. Baker, plaintiff presented to him regarding the December 4, 2005 incident. At this visit, plaintiff reported that she was lifting a box at work the other day and began having some right leg pain and left leg pain down the thigh.
13. Plaintiff returned to Medical Associates of Davie on December 12, 2005. As her back pain had not subsided, it was recommended that plaintiff take another week to ten days off. *Page 6 
14. On January 10, 2006, plaintiff underwent a lumbar MRI that revealed early degeneration and mild bulging of the L2-3 disc without disc herniation or spinal canal stenosis; L4-5 diskectomy without recurrent disc protrusion or spinal canal stenosis; and L5-S1 diskectomy with diffuse disc bulging and small left paracentral disc protrusion but without nerve impingement or spinal canal stenosis.
15. Plaintiff returned to Dr. Baker's office on January 18, 2006. Plaintiff continued to have low back and bilateral leg pain. Plaintiff rated the low back pain as eighty percent and the leg pain at twenty percent. Her pain had changed from more leg to more back. Dr. Baker recommended transforaminal blocks bilaterally at L4-5 and L5-S1 to help with plaintiff's low back and leg symptoms.
16. On April 3, 2006, Dr. Baker noted that the transforaminal blocks did not help plaintiff's pain symptoms to any significant extent. Consequently, on April 26, 2006, Dr. Baker performed a lumbar discogram in order to evaluate plaintiff's painful discs. The discogram revealed grossly degenerative discs at L4-5 and L5-S1. A CT scan performed with the discogram revealed an annular tear at L3-4 and diffuse annular degeneration at L4-5, L5-S1.
17. Dr. Baker saw plaintiff on May 10, 2006. Dr. Baker interpreted the discogram as showing multilevel degenerative changes including grossly degenerative posterior tears. After reviewing the discogram, Dr. Baker concluded that surgical intervention was not recommended for plaintiff's lumbar spine. Dr. Baker did not see plaintiff after the May 10, 2006 visit.
18. Plaintiff sought treatment with Dr. Ranjan Roy, a neurosurgeon on May 23, 2006. Plaintiff has a cervical spine condition unrelated to the December 4, 2005 incident. Dr. Roy treated plaintiff for both her cervical and lumbar spine problems. Dr. Roy performed a cervical *Page 7 
diskectomy and fusion at C5-6 and C6-7 in June 2006. Plaintiff successfully recovered from the June 2006 cervical surgery. Her cervical condition did not keep her from working.
19. On June 15, 2006, Dr. Roy performed an EMG test regarding plaintiff's lumbar spine. The EMG test findings were consistent with an irritation to the right L5 and S1 nerve roots. As a result of the EMG test findings and plaintiff's pain, Dr. Roy recommended a wide decompression from L4-S1 followed by posterolateral bony fusion and pedicle screw fixation at L4-S1. Dr. Roy performed the surgery on August 3, 2006.
20. Bill Talbert, an Asset Protection Coordinator with defendant-employer testified at the hearing before the Deputy Commissioner. On December 4, 2005, Mr. Talbert was employed as a Loss Prevention Associate at the Mocksville store where plaintiff worked. As part of his job duties, Mr. Talbert was responsible for maintaining surveillance at the store. Mr. Talbert was asked to pull video from plaintiff's shift on the evening of December 4, 2005. Mr. Talbert reviewed footage from six or seven cameras in the area in which plaintiff was working. He created a disc containing footage from 10:19:59, December 4, 2005 until 1:54:47, December 5, 2005.
21. The area where plaintiff was injured is not where the camera covered. Plaintiff could not be viewed the entire time on the video because the cameras did not cover all of the areas where she was working.
22. In assessing the evidence regarding the December 4, 2005 incident, as a whole, the Full Commission finds plaintiff to be credible.
23. Dr. Baker opined to a reasonable degree of medical certainty that the December 4, 2005 described by plaintiff and found as fact herein, more likely than not was the incident that caused plaintiff's change in symptoms and gave rise to the April 28, 2006 discogram. Dr. Baker *Page 8 
explained that he could not say whether there was a change in her discographic findings as he did not have a discogram beforehand because plaintiff was not having primary back pain, it was primary leg pain. Dr. Baker further explained that a discogram's purpose is to elicit back pain more so than leg pain.
24. Dr. Baker further opined that the December 4, 2005 incident described by plaintiff and found as fact herein, aggravated plaintiff's pre-existing lumbar spine condition.
25. Dr. Roy opined to a reasonable degree of medical certainty that the December 4, 2005 incident described by plaintiff and found as fact herein, not so much the lifting but the mechanics of the body when the disc wasn't prepared for that particular event, could have triggered the onset of back and leg pain.
26. Dr. Roy further opined to a reasonable degree of medical certainty that the December 4, 2005 incident described by plaintiff and found as fact herein more likely than not accelerated plaintiff's pre-existing lumbar spine condition to the extent that she required a fusion.
27. Both Dr. Baker and Dr. Roy testified that if the evidence shows that plaintiff was not injured at work, then they would change their opinions that the work injury led to plaintiff's symptoms. However, defendants have not presented sufficient evidence that plaintiff's injury and resultant symptoms occurred in any manner other than that alleged by plaintiff.
28. Based on review of the evidence as a whole, the Full Commission finds that plaintiff suffered a specific traumatic incident on December 4, 2005. As a result of the specific traumatic incident, plaintiff suffered an aggravation of her pre-existing lumbar spine condition.
29. Since, December 7, 2005, when plaintiff presented to Medical Associates of Davie and continuing, plaintiff has uninterruptedly been written out of work by Dr. Baker and Dr. Roy for her December 4, 2005 compensable injury to her lumbar spine. *Page 9 
30. At the time of his deposition on May 12, 2007, Dr. Roy opined that plaintiff was not at maximum medical improvement with regard to her lumbar surgery. Dr. Roy testified that he usually reserved maximum medical improvement to nine months up to one year. Plaintiff had not been assigned a permanent partial disability rating pursuant to N.C. Gen. Stat. § 97-31 with regard to her lumbar spine.
31. Based upon the Form 63 contained in the record, the Full Commission finds that plaintiff's average wage is $501.83, yielding a compensation rate of $334.56.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, plaintiff must prove that the back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222, 224,374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). Under a specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert. denied,339 N.C. 737, 454 S.E.2d 650 (1995);Bradley v. E.B. Sportswear, Inc., 77 N.C. App. 450,335 S.E.2d 52 (1985).
2. On December 4, 2005, plaintiff suffered a specific traumatic incident arising out of and in the course of her employment with defendant-employer, which aggravated her pre-existing lumbar spine condition. N.C. Gen. Stat. § 97-2(6). *Page 10 
3. The North Carolina Supreme Court has held that in cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot FreightCarriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation."Holley v. ACTS, Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Id. at 232, 581 S.E.2d at 753. In the present case, plaintiff has presented sufficient evidence to establish a causal relationship between her December 4, 2005 workplace injury and the condition for which she was being treated. Defendants have not presented sufficient evidence that plaintiff's injury and resultant disability occurred in any manner other than that alleged by plaintiff.
4. Plaintiff is entitled to temporary total disability compensation at the rate of $334.56 per week beginning December 5, 2005 and continuing until she returns to suitable employment or until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. As a result of her December 4, 2005 specific traumatic incident, plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred in the future for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
6. There has been no finding of maximum medical improvement, and there is insufficient evidence to determine, at this time, whether plaintiff is entitled to any total or partial disability compensation. As such, these issues are reserved for subsequent determination by the *Page 11 
Industrial Commission. See Georgette L. Hill v. Caswell Center, I.C. No. 536170 (Full Commission, February 17, 1997).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay to plaintiff compensation benefits at the rate of $334.56 per week for the period beginning on December 5, 2005, and continuing until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as long as the same is reasonably designed to effect a cure, provide relief or lessen the plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded in paragraph 1 of this Award is hereby approved for plaintiff's counsel. Thereafter, every fourth check shall be directed to plaintiff's counsel.
4. The issue of plaintiff's entitlement to total and/or partial disability compensation is reserved for subsequent determination.
5. Defendants shall pay the costs.
This the 22nd day of April, 2008.
S/_______________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 *Page 1